UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA A. KRAFT,

                        Plaintiff,              06-CV-0547-E

                v.                              **DECISION**
                                                **and ORDER**
MICHAEL J. ASTRUE,[1]
Commissioner of Social Security

                        Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff Lisa A. Kraft ("Plaintiff") brings this action
pursuant to the Social Security Act ("The Act") § 216(I) and §
223, seeking review of a final decision of the Commissioner of
Social Security ("Commissioner"), denying her application for
Supplemental Security Income ("SSI") benefits.[2] Specifically,
Plaintiff alleges that the decision of Administrative Law Judge
("ALJ") John J. Mulrooney II denying her application for benefits
was not supported by substantial evidence contained in the record
and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to
Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the

_____

[1]Michael J. Astrue became the Commissioner of Social Security on
February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of
Civil Procedure, Michael J. Astrue is substituted for his predecessor
Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable Richard
Arcara, Chief Judge, United States District Court for the Western
District of New York by Order dated October 2, 2007.

Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Arthur's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## BACKGROUND

On June 24, 2004, Plaintiff, who was then 29 years old, filed an application for Supplemental Security Income (Tr. at 64-6739-41). Plaintiff claimed an inability to work since January 2001, due to mental impairment (Tr. at 64). Plaintiff's application was denied initially on September 21, 2004 (Tr. at 33-36), and she then filed a timely request for a hearing before an ALJ (Tr. at 37). Plaintiff appeared, with counsel (Betty Ann Brancato-Schnick, Attorney for Claimant), in an administrative hearing before ALJ John J. Mulrooney II on August 31, 2005 in Buffalo, NY (Tr. at 204).

In a decision dated October 3, 2005, ALJ Mulrooney found that although Plaintiff's dysthymic and borderline personality

disorders were severe, the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act")(Tr. at 15). Plaintiff appealed that decision to the Social Security Appeals Council ("Appeals Council") on December 5, 2005 (Tr. at 10).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 19, 2006 (Tr. at 4-6). On August 17, 2006, Plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and this section has been made applicable to SSI cases by 42 U.S.C. § 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a

benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## II. <u>The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.</u>

In finding that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for SSI. <u>See</u> 20 C.F.R. § 404.1520 and

416.920.[3] Under step one of that process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. at 15).

At steps two and three of the analysis, the ALJ found that Plaintiff had a dysthymic disorder and a borderline personality disorder (Tr. at 15).  He found these impairments to be severe within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4., Listings 12.04 (Affective Disorders) or Listings 12.08 (Personality Disorders) (Tr. at 15).

At steps four and five of the five-step evaluation process, the ALJ concluded that during the claimed period of disability, the Plaintiff retained the residual functional capacity to perform work at all exertional levels (Tr. at 15).  However, the ALJ found that the Plaintiff had non-exertional limitations that required that her work be limited to simple, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and in general, relatively few work place changes (Tr. at 15).  Based on this analysis of the

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

Plaintiff's condition, the ALJ determined that Plaintiff was unable to return to any of her past relevant work as a fast food worker, sales attendant, short order cook/bartender, or library technician assistant (Tr. at 17).

The ALJ then turned to step five and the question of whether there was any other work in the national economy that the claimant could perform (Tr. at 18). The ALJ found that the plaintiff could fulfill the requirements of jobs at all exertional levels, but had a number of non-exertional requirements (Tr. at 17-18). The ALJ then called a vocational expert ("VE") to testify as to the availability of jobs in the national economy for someone with the Plaintiff's residual functional capacity and non-exertional limitations (Tr. at 18-19). Based on the testimony of the VE, the ALJ found that the Plaintiff was capable of performing the job duties of a small parts assembler or mail clerk (Tr. at 18). The ALJ also relied on the testimony of the VE in finding that these jobs existed in significant numbers in the local and national economies (Tr. at 18). Based on these findings, the ALJ found that the Plaintiff was not disabled, and thus ineligible for SSI (Tr. at 19).

The Plaintiff contends that the medical evidence in the record supports a finding of disability for the period from January, 2001 through the present. The Plaintiff claims that her mental impairments were of such severity that she was unable to

perform any work that exists in the national economy. However, the ALJ found that, while limited, the Plaintiff's residual functional capacity was sufficient to allow her to perform work at all exertional ranges with some non-exertional limitations. The ALJ's conclusion that the Plaintiff retained a functional capacity inconsistent with a finding of disability is based on substantial evidence in the record.

A.   The ALJ's decision is supported by substantial evidence in the record.

A plaintiff claiming disability has "a continuing burden of showing, by means of 'medically acceptable clinical and laboratory diagnostic techniques'" that her physical and mental impairments are of such severity that she is unable to perform *any* substantial gainful activity. Matthews v. Eldridge, 424 U.S. 319, 336 (1976). It is not enough for a plaintiff to show that she is unable to perform work she has done in the past, but she must also show that he is unable to perform "any other kind of substantial gainful work which exists in the national economy." Id. In this case, the Plaintiff did not meet this burden. Based on the evidence in the record, the ALJ correctly found that the plaintiff did not meet her burden for the claimed period of disability beginning in January, 2001.

In making his finding, the ALJ carefully considered the Plaintiff's medical evidence contained in the record (Tr. at 15-17). Most notably, the ALJ extensively examined the opinions of

the Plaintiff's treating physician, Dr. Kashin.   His treatment notes from August of 2004 support the ALJ's finding (Tr. at 159-65).   He noted that the Plaintiff's mood and affect were mildly depressed (Tr. at 161).   He also noted that the Plaintiff had "some difficulty" with "attention and concentration," but she had good orientation, fair memory, fair insight and judgment, and had no limitations in adaptation (Tr. at 159-65).   He also stated that she receives psychiatric treatment every 3 weeks and that medication provided her with "some symptom relief (Tr. at 159, 161)."

Dr. Kashin also performed a "Mental Residual Functional Capacity Assessment" on the same visit in August 2004 that supports the ALJ's findings (Tr. at 154-57).   While Dr. Kashin does indicate that the Plaintiff is "Markedly Limited" in several areas, none of these areas would require a finding that the Plaintiff is unable to perform any substantial gainful activity. Dr. Kashin's notes indicate no limitation or moderate limitation in most areas.   While Dr. Kashin's notes confirm that the Plaintiff does have a severe impairment, they also reveal that the Plaintiff retains a  strong level of functionality that is inconsistent with a finding of disability.   The ALJ properly accounted for the Plaintiff's non-exertional deficiencies as described by Dr. Kashin, by providing a number of non-exertional limitations on the Plaintiff's residual functional capacity.

In an assessment dated August 9, 2004, Dr. Kashin diagnosed the Plaintiff as having a dysthymic disorder and borderline PDO, and also noted that he had not seen the Plaintiff since January 17, 2002 (Tr. at 159). He reported that she felt anxious and depressed most of the time, and also provided care for her one year old son with heart problems over whom she had custody (Tr. at 159-160). He further reported that she was overwhelmed with life and was in the midst of working with the court system regarding a custody dispute over her two older sons because the court had granted custody to the biological father and his (father's) mother (Tr. at 160). This court recognizes that the Plaintiff's life problems and circumstances combined with her mental impairments have caused her great pain and difficulty. However, such evidence does not relieve this court of its duty to determine her work capacity. Even giving the medical reports and opinions of Dr. Kashin full weight, these records support the ALJ's conclusion that the Plaintiff can perform some limited work within her medically determinable limitations.

Dr. Thomas Ryan performed a consultative examination of the Plaintiff in September of 2004. He found that the Plaintiff was "dysthymic," and his diagnosis reflects this (Tr. at 166-69). He also made the following statements regarding her condition:

> "She can follow and understand simple directions, perform simple tasks, maintain attention and concentration, could

*maintain a regular schedule, and capable of learning some new tasks. She may have some difficulty with complex tasks. Decision making appears to be adequate. She can relate with others. She has difficulty dealing with stress. The results are inconsistent with the allegation* (Tr. at 168)*."*

Dr. Ryan's records confirm that while the Plaintiff does indeed have a dysthymic impairment, she retains a high level of functionality. His findings support the residual functional capacity determined by the ALJ.

The ALJ also accords "some weight" to the opinions of the State Agency medical consultant, Dr. Hillary Tzetzo. (Tr. at 17). Dr. Tzetzo found moderate to insignificant limitation in each area listed on the "Mental Residual Functional Capacity Assessment" that she performed in September 2004 (Tr. at 186-89). Such evidence may support a finding of limitations but does not support a finding of disability. There is substantial medical evidence in the record to support the ALJ's finding that the Plaintiff was not disabled.

The plaintiff's own testimony regarding her activities of daily living support the ALJ's decision. She stated that she cares for her children, dresses herself, cooks meals, goes shopping and does household chores (vacuuming, dishes, laundry) (Tr. at 92, 219-21). Such activities are consistent with the ALJ's finding that the Plaintiff can do the full range of

exertional work with some non-exertional limitations. The Plaintiff's own admission of such activity is inconsistent with a finding of disability, and supports the ALJ's decision.

This evidence, when viewed in light of the total record, supports the ALJ's decision. While it is clear that the Plaintiff's dysthymic and borderline personality disorders are indeed severe, they are not sufficiently severe to preclude her from participating in any substantial gainful activity. The ALJ correctly concluded that the Plaintiff was unable to return to her past relevant work as a fast food worker, sales attendant, short order cook/bartender, or library technician assistant. In light of the inability to perform her past relevant work, the ALJ was required to assess the residual functional capacity of the plaintiff and determine whether there existed jobs for which that capacity would make her eligible.

The ALJ assessed the Plaintiff's residual functional capacity in light of her severe impairments, and found that she was capable of performing the full exertional work range with some non-exertional limitations (Tr. at 17-19). The ALJ then put the Plaintiff's condition before a vocational expert ("VE") in order to determine if there would be jobs available to the plaintiff in the national economy (Tr. at 229-35). The VE testified that the plaintiff could functionally qualify for the jobs of small products assembler and mail clerk despite her impairments and

limitations (Tr. at 233-35).   The VE also testified that there were a significant number of jobs in these categories in the regional and national economies (Tr. at 233-35).   The ALJ's analysis was proper, and his findings were supported by substantial evidence in the record.

The ALJ's assessment that the Plaintiff remained functionally capable of performing a full range exertional work, with some non-exertional limitations is accurately supported by substantial evidence in the record.

B.   <u>The ALJ properly applied the treating physician rule in making his decision.</u>

The plaintiff contends that the ALJ failed to properly evaluate the opinion of the Plaintiff's treating physician, Dr. Jeffrey Kashin.   The Second Circuit authority grants controlling weight to the opinion of a treating physician.   <u>Clark v. Commissioner of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). Indeed, courts in this circuit require that an ALJ provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician.   <u>See Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998); <u>see Vales v. Apfel</u>, No. 99-CV-3298 (JG), 2000 WL 863462, at *5, 2000 U.S. Dist. LEXIS 8209, at *18, (E.D.N.Y. June 13, 2000).   An ALJ must consider the following factors in determining whether a treating physician's opinion is to be given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship;

(ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

The ALJ recognizes Dr. Kashin as a treating medical source in his decision (Tr. at 16). The ALJ also examined the medical records developed by Dr. Kashin at length in his decision (Tr. at 16). The ALJ fully discusses the most pertinent parts of Dr. Kashin's records including the Mental Residual Functional Capacity Assessment performed by the doctor in August 2004 (Tr. at 154-56). The ALJ's examination and evaluation of Dr. Kashin's records detailing the Plaintiff's treatment is detailed, thorough and accurate.

The Plaintiff claims that because the ALJ failed to "explicitly" assign a "specific" weight to the opinion of Dr. Kashin, the ALJ violated the treating physician rule (Pl. Br. at 4-7). This argument ignores the fact that the longest and most substantial part of the ALJ's analysis of the medical records focuses on the opinions of Dr. Kashin (Tr. at 16-17). The extensive analysis by the ALJ of Dr. Kashin's opinion demonstrates that the ALJ heavily relied on the opinion of Dr. Kashin in making his decision.

The ALJ found that the opinion of Dr. Kashin supported a finding that the Plaintiff is not disabled.   The Plaintiff insists, however, that Dr. Kashin's opinion establishes disability.   However, a difference of opinion with regard to interpretation of medical evidence does not establish a violation of the treating physician rule.   A plain reading of the ALJ's decision supports the conclusion that the ALJ did indeed give Dr. Kashin's opinion substantial weight in making his ultimate decision.

The plaintiff argues that the ALJ's failed to give appropriate weight to Dr. Kashin's opinion because the ALJ does explicitly assign the opinion of the State Agency consultative physician "some weight" in his decision (Tr. at 17).   However, it is clear that the ALJ discusses the weight given to the consultative examiner's opinions in order to confirm that he did not give these opinion more weight than is appropriate under The Act.   As correctly stated by the ALJ, the opinions of consultative examiners are to be accorded "some weight," or less weight than the inherently more reliable opinions of treating sources. 20 C.F.R. 1512, 404.1527, 416.912, 416.927; See Westphal v. Eastman Kodak Co., 2006 WL 1720380 *4, 5 (W.D.N.Y. 2006).   Accordingly, the ALJ gave some weight to the opinion of medical consultants in evaluating the medical evidence in the record, and substantial

weight to the opinions of the Plaintiff's treating sources.  This analysis was proper.

     C.   <u>The ALJ properly discounted the Plaintiff's subjective complaints.</u>

Plaintiff argues that the ALJ improperly discredited the plaintiff's credibility.  The statements of an individual claiming disability must be carefully considered to the extent that they are consistent with the objective medical evidence in the record.  Social Security Ruling 96-7p.  However, the ALJ is not obligated to accept the plaintiff's subjective testimony regarding his impairments to the extent the testimony is inconsistent with the medical evidence in the record.  <u>Kendall v. Apfel</u>, 15 F. Supp. 2d 262, 267 (E.D.N.Y. 1998).  The ALJ properly found that the objective medical evidence in the record did not support the level of difficulty and disability claimed by the Plaintiff (Tr. at 16).

In his decision, the ALJ found that "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible (Tr. at 16)."  It is clear from the evidence in the record that this finding is accurate and supported by substantial evidence.

It is clear that the objective medical evidence in the record does not support a finding of disability, as the plaintiff claims.  Furthermore, while the Plaintiff's mental impairments are severe, her activities of daily living do not support the level of difficulty claimed by the plaintiff.  She cares for her children,

dresses herself, cooks meals, goes shopping and does household chores such as vacuuming, doing dishes, and doing laundry) (Tr. at 92, 219-21). While the Plaintiff claims that she is somewhat limited in doing these activities, her participation in such activities, even if limited, is nonetheless inconsistent with a finding of disability.

The Plaintiff's testimony regarding her own lifestyle and the Plaintiff's medical records support the ALJ's conclusion that her subjective complaints are not fully credible. The ALJ properly evaluated Plaintiff's testimony in light of the evidence in the record, and his decision discrediting Plaintiff's subjective testimony was supported by substantial evidence in the record.

The court does not dispute the severity of the Plaintiff's dysthymic and borderline personality disorders as diagnosed and treated by the Plaintiff's medical sources, however the Plaintiff has not met her burden of proving that these impairments prevented her from engaging in *any* substantial gainful activity during the period in dispute.

The ALJ properly concluded, based on the evidentiary record in its entirety, that the claimant retained a residual functional capacity sufficient to perform the functional demands of the full exertional range of work with some non-exertional limitations, during the claimed period since January 2001, and therefore was not disabled within the meaning of the Act.

<u>CONCLUSION</u>

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 18, 2008